UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - PLAINTIFF'S MOTION FOR PARTIAL DISMISSAL OF DEFENDANT'S FIRST AMENDED COUNTERCLAIM (Dkt. 32, filed on August 24, 2022)

## I.   INTRODUCTION

Presently before the Court is plaintiff's partial motion to dismiss defendant's first amended counterclaim. The Court finds that plaintiff's motion is appropriate for decision without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the matter is hereby taken under submission.

On February 14, 2022, plaintiff Motivo Engineering, LLC filed suit in Los Angeles County Superior Court against defendant Black Gold Farms ("BFG") and Does 1-25 for (1) breach of contract; and (2) restitution/unjust enrichment. Dkt. 1-1 ("Compl."). Plaintiff is an end-to-end product design and engineering firm that builds robotic automation equipment in the agricultural industry. Id. ¶¶ 1, 2. Defendant is a North Dakota cooperative association whose farming operations date back to 1928. Dkt. 12 ¶ 6. The dispute in this case arises from the joint development of an automated sweet potato transplanter (the "Project") by plaintiff and defendant. Compl. ¶ 2. The transplanter is a smart robotic implement that can transplant potatoes when pulled behind machinery. Id. Plaintiff alleges that during the phase of the Project that called for production of a prototype, costs climbed beyond the original scope of the contract due to design decisions that were approved by defendant. Id. ¶ 3. Plaintiff asserts that notwithstanding defendant's approval of certain design decisions, and even though plaintiff informed defendant in advance that the costs of the Project would exceed the total value of the scope of work, defendant has refused to pay plaintiff for the cost overruns. Id. ¶¶ 3, 10. Plaintiff claims that it is owed at least $1.3 million as a result of time and materials expended in order to get a prototype of the transplanter functioning in the field. Id. ¶ 15. Plaintiff claims that it is also owed either prejudgment interest at 10% per annum or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                               'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

interest on the outstanding amount due at a default rate of 2% per month until paid, for a total of $520,000 as of the time of the filing of the complaint. Id.

On March 4, 2022, defendant removed the case to this Court pursuant to the Court's diversity jurisdiction. Dkt. 1.

On April 15, 2022, defendant answered the complaint and filed a counterclaim against plaintiff. Dkt. 12. Defendant's initial counterclaim included claims for (1) breach of contract; (2) conversion; and (3) replevin/claim and delivery. Id. ¶¶ 30-57.

On May 27, 2022, plaintiff moved to dismiss defendant's claim for conversion on the ground that defendant's conversion claim is barred by California's economic loss rule. Dkt. 18. On June 27, 2022, the Court granted plaintiff's motion to dismiss the conversion claim without prejudice. Dkt. 26.

On July 27, 2022, defendant filed its first amended counterclaim. Dkt. 27 ("FACC"). The FACC includes claims for (1) breach of contract; (2) tortious breach of contract; and (3) replevin/claim and delivery. Id.

On August 24, 2022, plaintiff filed the instant motion to dismiss defendant's tortious breach of contract claim, as well as its request for punitive damages. Dkt. 32 ("Mot."). On September 2, 2022, defendant filed its opposition. Dkt. 34 ("Opp."). On September 12, 2022, plaintiff filed a reply. Dkt. 38 ("Reply").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

The relevant facts are drawn from defendant's amended counterclaim and the parties' Master Services Agreement.

On or around September 20, 2017, the parties entered into a Master Services Agreement (the "Agreement") regarding the joint development of an automated sweet potato transplanter. FACC, ¶¶ 8–9. Per the Agreement, Motivo was required to submit Statements of Work ("SOW") to BGF for approval prior to starting work on any SOW. Id. ¶ 10. Each SOW identified the scope and cost of any work to be performed in support of the Project, and Motivo was not to exceed the identified scope or cost without prior approval from BGF. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                            'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

Pursuant to the Agreement, upon full payment of associated SOWs, BGF would solely own all materials (including software, products, inventions, documents, developments, and writings) developed or invented by Motivo (including any of its employees or agents) that are provided to BGF pursuant to a SOW. Id., Ex. A ("Agmt.").

For the Phase 3B/C SOW, which is at the heart of this dispute, Motivo was to deliver a field-ready demonstrable prototype version of the Project. FACC ¶ 13. BGF alleges that it paid the 3B/C SOW in full, and also made payment in connection with every other SOW ever issued by Motivo. Id. ¶¶ 14–15. However, after the approval of the 3B/C SOW, the parties relationship broke down, primarily due to cost overruns. See, e.g., id. ¶ 22.

The parties' relationship further deteriorated following a field demonstration in June or July 2020 that BGF describes as "less than successful." Id. ¶ 24. After the field demonstration concluded, Motivo packed up the prototype, took it back to its headquarters, and continued to demand more money from BGF. Id. ¶ 25.

In June 2021, BGF provided notice of termination of the Agreement and requested that Motivo "transfer all Deliverables and Background Technology related to the paid SOWs"—i.e., all materials created through Phase 3B/C of the Project. Id. ¶ 27. Motivo refused, conceding that there was no written authorization to incur the additional costs but claiming that BGF "implicitly" approved certain change orders. Id.

On April 13, 2022, Motivo allowed BGF to take position of the prototype and some deliverables. Id. ¶ 28. The prototype appeared to have been significantly damaged as a result of Motivo's failure to preserve the prototype while it was in its possession. Id. BGF alleges that it has already spent over $2 million on the Project and has nothing substantial to show for it, and that it lost opportunities with at least three potential partners to commercialize the project by engaging them to manufacture the machine. Id. ¶¶ 29, 47.

### III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                           'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988). A court must read the complaint in the light most favorable to the non-movant. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Where a court converts a motion to dismiss into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

While generally a "court should 'freely give leave [to amend] when justice so requires,' " leave to amend is "properly denied" where "amendment would be futile," Carrico v. City & Cty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL                                   'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

Fed. R. Civ. P. 15(a)(2)).  Amendment would be futile if the plaintiff cannot state a cognizable claim.  See Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

## IV.   DISCUSSION

"Under the economic loss rule, [a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." Expedited Packages, LLC v. Beavex Inc., No. 15-cv-00721-MMM-AGRx, 2015 WL 13357436, at *2 (C.D. Cal. Sept. 10, 2015) (internal quotation marks and citation omitted).  "[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies," such as the tortious breach of a contract. Erlich v. Menzes, 21 Cal. 4th 543, 552 (1999) (internal quotation marks and citation omitted).  Under California state law, "generally, outside the insurance context, a tortious breach of contract . . . may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." Id. at 553–54 (quoting Freeman & Mills, Inc. v. Belcher Oil. Co., 11 Cal. 4th 85, 105 (1995) (Mosk, J., concurring in part and dissenting in part)).  "Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated." Id. at 554.

Here, plaintiff argues defendant's tortious breach of contract allegations do not correspond to any of the three Erlich categories set forth above, and that defendant has not alleged any damages resulting from the tortious breach beyond the economic damages suffered as a result of the breach of contract itself.

### A.   Erlich Categories for Tortious Breach of Contract

First, plaintiff argues that the economic loss rule bars the new tortious breach of contract claim for the same reasons it barred the dismissed conversion claim.  Mot. at 13.  Plaintiff contends that the only primary difference between the defendant's dismissed conversion claim and the newly-amended tortious breach of contract claim is that "BGF

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                              'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

has now removed the conversion label, and has replaced it with a vague allegation that the breach was 'tortious,' while refusing to specify any actual tort." Id. at 13. Here, plaintiff asserts that the defendant's characterization of the tortious breach of contract as "coercive" does not actually arise from an independent tort duty: because "Motivo would have no tort duty to provide [deliverables] and intellectual property to BGF in the absence of a contract to do so," "any duty to refrain from demanding money in exchange for those materials and intellectual property is entirely dependent on the parties' agreement." Id. at 17.

In opposition, defendant reiterates several points it raised in the prior motion to dismiss its conversion claim, including that "the economic loss rule does not shield Motivo from liability for its intentional tortious breach of the parties' Agreement—e.g., its refusal to give BGF what it was owed in an effort to coerce the payment of additional monies from BGF—i.e., Motivo ransomed the property." Opp. at 4. Additionally, defendant argues that the act of coercing a payment not required in the contract is consequently "not based on the same allegations as BGF's breach of contract action." Id.

In reply, plaintiff argues that Motivo has not challenged the principle that "demanding payment of money in exchange for performance of a contract is not extortion or any other tort recognized by California," and that Motivo has not identified any other independent tort duty. Reply at 10 (citing Mammo v. Sako (In re Sako), Nos. 13-05182-CL7, 13-90210-CL, 2015 Bankr. LEXIS 1906, at *36–39 (Bankr. S.D. Cal. Mar. 6, 2015)).

Second, plaintiff argues that the other two Erlich categories—the means used to breach the contract are "tortious, involving deceit or undue coercion"; and party intentionally breaching a contract knowing a breach will cause severe harm in the form of substantial consequential damages—are inapplicable here. Plaintiff contends that the tortious or coercive means exception does not apply "where no identifiable tort was alleged." Id. at 14; see also id. at 14–15 (noting that the out-of-state cases cited as successful examples of the second Erlich category of tortious breach involved threats to defame and maliciously prosecute the other contracting party) (citing Freeman & Mills, Inc. v. Belcher Oil. Co., 11 Cal. 4th 85, 110 (1995) (Mosk, J., concurring in part and dissenting in part)). Additionally, plaintiff notes that the third Erlich category, focused on severe harm, has "generally occurred outside the commercial context, involving manifestly unequal contracting parties and contracts concerning matters of vital personal significance, in which great mental anguish or personal hardship are the probable result

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                                  'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

of the breach." 11 Cal. 4th at 111 (Mosk, J., concurring in part and dissenting in part), cited in Mot. at 15.

In opposition, defendant disputes plaintiff's interpretation of the two Erlich exceptions. As to the second category, the deceit or undue coercion category, defendant argues that Motivo's characterization that it "only applies when the breach of contract is accompanied by an independent tort" would render that category superfluous to the first category requiring the breach to be "accompanied by a traditional common law tort." Opp. at 5. Similarly, as to the third category, defendant argues that plaintiff "overstates the law" in claiming that the third category is limited to a personal context and not a commercial one. Id. at 7

In reply, plaintiff contends that defendant misconstrues the three Erlich categories. Plaintiff emphasizes that in the sentence immediately following the description of the three categories of tortious breach, the Erlich court explained, "Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated." Reply at 8–9 (quoting 21 Cal. 4th at 553–54). And while defendant quotes the Erlich court noting that "[a] contractual obligation may create a legal duty and the breach of that duty may support an action in tort," plaintiff again points to that opinion's succeeding sentence: "This is true; however, conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." Id. at 9.[1] Finally, plaintiff disputes defendant's argument that the third Erlich factor does not apply in the commercial context, noting that defendant "cites no case at all in which the third exception has ever been applied in a commercial context." Id. at 12.

The Court finds that none of the three Erlich categories for a tortious breach of contract claim are applicable here. As to the first category, a breach accompanied by an independent tort, defendant does not allege that plaintiff's demand for additional money

---

[1] Plaintiff also contends, assuming arguendo that a party can bring a tortious breach of contract claim without alleging an independent tort duty, that "a mere threat of non-performance of contract cannot be deemed 'unduly coercive' when the threat is not even coercive enough to cause [BGF] to succumb and pay the demanded amount." Reply at 11 (citing 11 Cal. 4th at 113 (Mosk, J., concurring in part and dissenting in part) ("[A]n intentional breach of contract may be found to be tortious when the breaching party exhibits an extreme disregard for the contractual rights of the other party . . . [by] employing coercion or dishonesty to cause the promise to forego its contractual rights.")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                                'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

before continued contractual performance violated any independent tort duty. Indeed, defendant *cannot* allege that plaintiff's demand violated an independent tort duty, because the Court has already found that defendant's "ownership interest arises solely from the Master Services Agreement the parties entered into." Dkt. 26 at 7 (citing Expedited Packages, 2015 WL 13357436, at *4); see also Mot. at 19–20 (collecting California cases explaining that attempted but incomplete coercion is insufficient to give rise to a cognizable civil extortion claim).

Similarly, as to the second Erlich category, the Court reads the relevant analysis in Erlich as requiring that "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." 21 Cal. 4th at 551; see also Expedited Packages, 2015 WL 13357436, at *3 ("The California Supreme Court has 'strongly suggested' that, in the absence of the violation of a duty arising under tort law independently of the breach of contract itself, lower courts should limit recovery in breach of contract actions to the insurance area.") (quoting Aqua Connect v. Code Rebel, LLC, No. 11-cv-05764-RSWL-MANx, 2013 WL 3820544, at *4 (C.D. Cal. July 23, 2013)). As described above, defendant does not allege that plaintiff's demand for additional compensation violates any tort duty existing independently of the contract, in contrast to plaintiff's cited examples in which the coercive threats violated independent existing tort duties such as defamation and malicious prosecution.[2]

---

[2] Even if defendant were correct that there need not be an independent duty alleged for breach of contract by means of undue coercion, defendant's FACC does not plausibly allege "undue coercion." Taking the allegations as true, defendant alleges that plaintiff communicated to defendant it had incurred overrun costs of $1 million, conceded there was no written authorization to incur the additional costs but incorrectly claimed that BGF had "implicitly" approved it, and "finally allowed BGF to take position of the prototype and some deliverables" two years later. See FACC, ¶¶ 20–29. However, none of these factual allegations plausibly rise to the level of "undue" coercion, and the Court does not accept as true the defendant's conclusory legal assertions that these actions were "tortious." See, e.g., Medawar v. Otis Elevator Co., No. 20-cv-5155-DMG-Ex, 2021 U.S. Dist. LEXIS 190398, at *10 (C.D. Cal. Aug. 13, 2021) ("Any interpretation of the statement [offering overtime work in exchange for overtime pay] as some sort of veiled extortion strains the plausibility standard."); Freeman & Mills, 11 Cal. 4th at 111 (Mosk, J., concurring in part and dissenting in part) ("The first category focuses on tortious

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

Finally, the Court finds persuasive the case law limiting the third Erlich category to personal and not commercial contexts. In setting out these categories, Erlich directly quotes Justice Mosk's opinion in Freeman & Mills, which noted that the third Erlich category of tortious breach "generally occurred outside the commercial context, involving manifestly unequal contracting parties and contracts concerning matters of vital personal significance, in which great mental anguish or personal hardship are the probable result of the breach." 11 Cal. 4th at 111 (Mosk, J., concurring in part and dissenting in part). In the absence of contrary California state case law, another court in this district has interpreted the interrelation between these two cases to hold that "cases falling into the third Erlich category—intending or knowing that the breach would cause severe, unmitigable harm—*must* occur outside the commercial context." Medawar v. Otis Elevator Co., No. 20-cv-5155-DMG-Ex, 2021 U.S. Dist. LEXIS 190398, at *11 (C.D. Cal. Aug. 13, 2021) (emphasis added). Accordingly, the third category is inapplicable given that "this case arises in a garden-variety commercial context, does not concern a matter of vital personal significance, and involves two parties who freely entered into an arm's length contract." Id. Even if defendant were correct that the third category can apply in typical commercial contexts, the damages alleged for its tortious breach claim are duplicative of the damages alleged for its breach of contract claim for the reason set forth below.

**B.     Duplicative Damages Between the Breach of Contract and Tortious Breach Claims**

Plaintiff argues that defendant has not alleged any damages resulting from the coercion beyond the economic damages it suffered as a result of the breach of contract itself. Mot. at 18. Plaintiff cites to the Eastern District of California order in Multifamily Captive Group v. Assurance Risk Managers in support of the proposition that "allowing a tort claim where the damages are entirely duplicative of breach of contract damages would open the door to tort claims in virtually every breach of contract case." Id. (citing 629 F. Supp. 2d 1135 (E.D. Cal. 2009)). Here, plaintiff argues that because the alleged damages arising out of the breach of contract—lost prospective business opportunities and the money required to rectify the harms from the contractual breach—would have resulted whether the breach occurred with or without the coercion. Put another way, "had Motivo simply breached the contract and refused to supply the deliverables without also

---

means used by one contracting party to coerce or deceive another party into foregoing its contractual rights.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                                      'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

attempting to coerce" a payment, defendant "has not alleged that it was damaged by the alleged coercion." Id. at 19. Moreover, plaintiff argues that the only damages unique to the tortious breach claim are exemplary damages, which are inapplicable given that California law prohibits punitive damages arising out of a breach of contract. Id. at 20.

In opposition, defendant claims while the contractual damages here are "the actual value of the Prototype as delivered versus what BGF paid," Motivo's alleged coercion constituting the tortious breach of contract has "expanded . . . the scope of the harm" caused. Id. at 8–9. Additionally, defendant argues that plaintiff's comparison of BGF's harms caused by Motivo's breach with or without the coercion occurring "should be rejected as an improper effort to rewrite the allegations in the counterclaims." Id. at 9.

In reply, plaintiff contends that defendant's logic that its consequential damages are not duplicative because they are not recoverable under a breach of contract theory "is beside the point." Reply at 11.[3]

The Court concludes that defendant's alleged damages for the tortious breach claim are duplicative of the damages for the breach of contract claim. See Opp. at 8 (quoting Brandon & Tibbs v. George Kevorkian Acct. Corp., 226 Cal.App.3d 442, 456 (1990)) (explaining that general damages include "those which would naturally arise from the breach, or which might have been reasonably contemplated or foreseen by both parties, at the time they made the contract, as the probable result of the breach"). Here, plaintiff's alleged "request for payment added nothing to the damages actually suffered by BGF" beyond the harms incurred from the underlying breach of contract. Reply at 11.

Finally, the Court agrees with plaintiff that defendant's request for exemplary and punitive damages in connection to its tortious breach of contract counterclaim must likewise be dismissed. See Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.

---

[3] Moreover, plaintiff points to the Master Services Agreement between the parties, which states that "in no event shall Motivo be liable for costs of procurement of substitute deliverables; lost profits; lost sales or business expenditures; investments; or commitments in connection with any business, loss of any goodwill or for any indirect, special, incidental, or consequential damages arising out of or related to this agreement or use of deliverables, however caused, on any theory of liability, whether or not customer has been advised of the possibility of such damage." Agmt., p. 22 ¶ 6(e), cited in Reply at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | September 28, 2022 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

4th 503, 516 (1994) ("In the absence of an independent tort, punitive damages may not be awarded for breach of contract even where the defendant's conduct in breaching the contract was willful, fraudulent, or malicious.").

As stated above, while generally a "court should 'freely give leave [to amend] when justice so requires,'" leave to amend is "properly denied" where "amendment would be futile," Carrico v. City & Cty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)).  Here, the factual allegations of defendant's amended counterclaim for tortious breach of contract ultimately mirror the factual allegations of its dismissed counterclaim for conversion.  It appears that further amendment would be futile.  See AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (a district court may deny leave to amend if "amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities").

## V.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiff's partial motion to dismiss defendant's first amended counterclaim **WITH PREJUDICE**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |