UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL         'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | January 30, 2023 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Douglas Hedenkamp  Alfredo Amoedo

**Proceedings:**  PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT  (Dkt. 44, filed on December 27, 2022)

## I.   INTRODUCTION

Presently before the Court is plaintiff's motion for leave to file a first amended complaint to add claims based on new facts it claimed it learned during discovery.

On February 14, 2022, plaintiff Motivo Engineering, LLC filed suit in Los Angeles County Superior Court against defendant Black Gold Farms ("BFG") and Does 1–25 for (1) breach of contract; and (2) restitution/unjust enrichment.  Dkt. 1-1 ("Compl."). Plaintiff is an end-to-end product design and engineering firm that builds robotic automation equipment in the agricultural industry.  Id. ¶¶ 1, 2.  Defendant is a North Dakota cooperative association whose farming operations date back to 1928.  Dkt. 12 ¶ 6. The dispute in this case arises from the joint development of an automated sweet potato transplanter (the "Project") by plaintiff and defendant.  Compl. ¶ 2.  The transplanter is a smart robotic implement that can transplant potatoes when pulled behind machinery.  Id. Plaintiff alleges that during the phase of the Project that called for production of a prototype, costs climbed beyond the original scope of the contract due to design decisions that were approved by defendant.  Id. ¶ 3.  Plaintiff asserts that notwithstanding defendant's approval of certain design decisions, and even though plaintiff informed defendant in advance that the costs of the Project would exceed the total value of the scope of work, defendant has refused to pay plaintiff for the cost overruns.  Id. ¶¶ 3, 10. Plaintiff claims that it is owed at least $1.3 million as a result of time and materials expended in order to get a prototype of the transplanter functioning in the field.  Id. ¶ 15. Plaintiff claims that it is also owed either prejudgment interest at 10% per annum or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | January 30, 2023 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

interest on the outstanding amount due at a default rate of 2% per month until paid, for a total of $520,000 as of the time of the filing of the complaint. Id.

On March 4, 2022, defendant removed the case to this Court pursuant to the Court's diversity jurisdiction. Dkt. 1.

On September 28, 2022, Motivo took the deposition of BGF's Chief Production Officer, Kerwin Bradley. See Dkt. 44-2, Ex. D. Additionally, on November 8, 2022, Motivo took the deposition of BGF's CEO, Eric Halverson. See id., Ex. E.

On December 27, 2022, Motivo filed the instant motion for leave to file a first amended complaint, seeking to add claims for fraud and misrepresentation, quantum meruit, and damages for receipt of stolen property pursuant to Cal. Pen. Code § 496. Dkt. 44 ("Mot."). On January 8, 2023, BGF filed an opposition. Dkt. 49 ("Opp."). On January 13, 2023, Motivo filed its reply. Dkt. 52 ("Reply").

On January 30, 2023, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Motivo and BGF's collaboration to develop an automated sweet potato transplanter

On or around September 20, 2017, the parties entered into a Master Services Agreement (the "Agreement") regarding the joint development of an automated sweet potato transplanter. Compl., ¶¶ 22–23. Per the Agreement, Motivo was required to submit Statements of Work ("SOW") to BGF for approval prior to starting work on any SOW. Id. Each SOW identified the scope and cost of any work to be performed in support of the Project, and Motivo was not to exceed the identified scope or cost without prior approval from BGF. Id.

Pursuant to the Agreement, upon full payment of associated SOWs, BGF would solely own all materials (including software, products, inventions, documents, developments, and writings) developed or invented by Motivo (including any of its employees or agents) that are provided to BGF pursuant to a SOW. Id., Ex. A ("Agmt.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | January 30, 2023 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

For the Phase 3B/C SOW, which is at the heart of this dispute, Motivo was to deliver a field-ready demonstrable prototype version of the Project. Compl., ¶¶ 25–32. Commencing in or about April 2020, the parties exchanged communications regarding a cost overrun for this phase of roughly $1 million. Id. ¶¶ 44, 49. After learning of this anticipated overage, BGF told Motivo to continue working to push for delivery of the Project. Id. ¶ 47.

The parties' relationship began to deteriorate following a field demonstration in June to July 2020. Id. ¶ 50. In the following months, BGF did not address Motivo's request to pay the Phase 3B/C SOW overrun. Id. ¶ 52. By April 29, 2021, Eric Halverson had notified Motivo that it did not intend to cover the full amount of the cost overrun for the project, denying it had ever approved the overrun. Id. ¶ 56.

On June 23, 2021, BGF served a termination letter to Motivo seeking to terminate the parties' collaboration under the Agreement. Id. ¶ 59.

**B.    Motivo's depositions of BGF executives in litigation prompts Motivo to seek leave to file fraud claims**

As described above, Motivo brought suit on February 14, 2022, bringing claims for breach of contract and restitution. On September 28, 2022, and November 8, 2022, Motivo respectively took the depositions of BGF's Chief Production Officer, Kerwin Bradley, and CEO, Eric Halverson. See Mot. at 17. At his deposition, Bradley testified that it was a true statement that "all the way through the prototype tests in June of 2020, you [BGF] never intended to pay – to pay Motivo more than was set by phase 3B and 3C." Id. at 15 (citing Dkt. 44-2, Ex. D). Similarly, at his deposition, Halverson answered "yes" to the question, "Is it a true statement that between March of 2020 and the -- the completion of the prototype testing in the field that Black Gold Farms never intended to pay Motivo beyond the dollar figure listed as the contract value in the statement of work 3B through 3C statement of work?" Id. (citing Dkt. 44-2, Ex. E).

Motivo characterizes Bradley and Halverson's deposition testimonies as evidence that—notwithstanding external representations to Motivo that BGF would pay for cost overruns during the Phase 3B/C SOW—BGF never actually intended to pay Motivo beyond the dollar figure listed as the contract value for each SOW. Id. at 15–16. Motivo alleges that this conduct constitutes fraudulent misrepresentation by which BGF induced

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | January 30, 2023 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

Motivo to continue to work on the Project and to incur cost overruns that Motivo reasonably believed BGF would pay for. Id.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure (hereafter, "Rule") 16(b)(4) provides that a scheduling order shall be modified "only for good cause." "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Accordingly, while the court may consider the "existence or degree of prejudice" to the opposing party, the focus of the court's inquiry is upon the moving party's explanation for failure to timely move for leave to amend. Id. "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' " Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609).

Federal Rule of Civil Procedure 15 provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Where leave to amend is sought, the decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982). "Five factors are taken into account to assess the propriety of a motion for leave to amend: [1] bad faith, [2] undue delay, [3] prejudice to the opposing party, [4] futility of amendment, and [5] whether the plaintiff has previously amended the complaint." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004) (citing Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir. 2003)). Some factors may be weighted more heavily than others; for example, "[s]ome courts have stressed prejudice to the opposing party as the key factor." Texaco v. Ponsoldt, 939 F.2d 794, 798 (9th Cir. 1991).

## IV. DISCUSSION

Plaintiff seeks to amend its complaint to add claims for fraud and misrepresentation, quantum meruit, and damages for receipt of stolen property pursuant to Cal. Pen. Code § 496.

Defendant opposes plaintiff's motion for leave to amend, arguing that it cannot satisfy either the "good cause" requirement of Rule 16 or the more liberal standard under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-01447-CAS-JCx | Date | January 30, 2023 |
|---|---|---|---|
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

Rule 15. Specifically, defendant argues that plaintiff lacked diligence in seeking leave to amend its complaint late in the litigation, and that this lack of diligence also demonstrates the bad faith of plaintiff's efforts to amend. Opp. at 8–9. Additionally, defendant contends that it will be prejudiced by the delays in the schedule that granting leave to amend would cause, and that plaintiff's proposed amendments are futile because they are barred by the same economic loss rule that the Court has repeatedly found applied to claims in defendant's own counterclaim. Id. at 10–11.

Plaintiff argues that it acted with diligence in seeking leave to amend, because (1) at the time of filing the initial complaint, it did not have the factual knowledge necessary to bring its proposed claims ("mere failure to perform a promise is not sufficient evidence . . . to give rise to a fraud claim"), and (2) it acted diligently to file the instant motion within two months after taking the deposition of defendant's CEO. Mot. at 18–24; Reply at 9–10 (citation omitted). Additionally, plaintiff argues that its proposed amendments are not futile, and that defendant will suffer no undue prejudice because only limited additional discovery would be necessary and plaintiff would stipulate to modifications of the current scheduling order to accommodate defendant. Mot. at 24–25.

The Court finds that plaintiff's request for leave to amend satisfies both Rule 16 and Rule 15. As set forth above, plaintiff originally brought claims based on defendant's alleged failure to perform under the agreement. The factual discovery that forms the basis for plaintiff's proposed fraud and related claims arose from depositions taken on September 28, 2022, and November 8, 2022. Under the circumstances, the Court finds that plaintiff did not lack diligence in seeking leave to amend its complaint within two months, which coincided with the holiday season. Accordingly, plaintiff did not act in bad faith. Plaintiff's proposed amendments do not materially enlarge the scope of litigation, they simply add a new legal theory for liability on the basis that defendant's alleged conduct constitutes fraud based on facts obtained in discovery.

Additionally, although defendant raises the substantive issue of the economic loss rule, the Court declines to conclude that plaintiff's proposed amendments are futile at this juncture. See, e.g., SAES Getters S.p.A. v. Aeronex, Inc., 219 F.Supp.2d 1081, 1086 (S.D. Cal. 2003) (explaining that issues raised with proposed amendments "are often more appropriately raised in a motion to dismiss rather than in an opposition to a motion for leave to amend").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-01447-CAS-JCx | Date | January 30, 2023 |
| Title | MOTIVO ENGINEERING, LLC v. BLACK GOLD FARMS | | |

Finally, to the extent that defendant contends that it will suffer prejudice because of scheduling delays, the Court believes that the following modified schedule can be arranged to enable defendant the opportunity to take limited discovery and file dispositive motions in the litigation while adhering to the initial July 11, 2023 trial date.[1]

## V.  CONCLUSION

In accordance with the foregoing, the Court **GRANTS** plaintiff's motion for leave to amend. The Court directs the Clerk to file in the proposed first amended complaint attached to plaintiff's motion at dkt. 44-4.

IT IS SO ORDERED.

| | 00 : 08 |
|---|---|
| Initials of Preparer | CMJ |

---

[1] At oral argument, the parties indicated that they intend to file a stipulated amendment to the Court's scheduling order in light of this order granting plaintiff leave to file the proposed amended complaint.